UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL ACTION NO. |
| | ) | 13-10308-DPW |
| v. | ) | |
| | ) | |
| BERNARD MOROSCO and | ) | |
| JAMES FITZPATRICK, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM
December 22, 2014

Bernard Morosco moved to dismiss the indictment against him in this case, arguing that 18 U.S.C. § 371 is unconstitutionally vague as applied to him and that the indictment fails to allege each element of a conspiracy under § 371. James Fitzpatrick moved to join Morosco's motion dismiss, contending that Morosco's arguments applied equally to him but providing no additional argument. At a hearing on December 3, 2014, I allowed Fitzpatrick's motion to join Morosco's motion to dismiss but denied the motion to dismiss itself. This Memorandum provides an extended statement of my reasons for doing so.

**I.   BACKGROUND**

A federal grand jury returned an indictment against Bernard Morosco, James Fitzpatrick, and Michael McLaughlin[1] on October

---

[1] McLaughlin pleaded guilty in this matter on May 12, 2014 and was sentenced on June 20, 2014.

29, 2013. The indictment charged the three defendants with conspiracy to defraud the United States, a violation of 18 U.S.C. § 371. I draw the following background information from the allegations set forth in the indictment.

The grand jury charged that the defendants conspired to manipulate evaluations of the Chelsea Housing Authority (CHA). The CHA is a Public Housing Authority that receives substantial funding from the United States Department of Housing and Urban Development (HUD), the federal agency that ensures that public housing authorities like CHA meet the standard of decent, safe, and sanitary housing for properties receiving federal funding. Ind. ¶ 2. Regulations concerning the Public Housing Assessment System used to evaluate housing authorities, including the physical condition of the property and housing units, are codified at 24 C.F.R. § 902 et seq. Ind. ¶ 4. The regulations require that HUD provide for "an independent physical inspection" of Public Housing Authorities "that includes, at a minimum, a statistically valid sample" of the units in the project. 24 C.F.R. § 902.22; Ind. ¶ 4.[2]

---

[2] I note that the indictment says this quoted language is from 24 C.F.R. § 902.20, which is directed to the physical condition assessment more broadly. The language appears, however, to be from § 902.22, a nearby provision containing additional detail about the assessment.

The Real Estate Assessment Center (REAC) is the agency within HUD that performs these evaluations. Ind. ¶ 4. The inspections are conducted by independent contractors who have been trained and certified by REAC. A certified REAC inspector is given a password to access the secure REAC server that contains data on public housing authorities. Ind. ¶ 5. Once a REAC inspector is assigned a particular inspection, the inspector can download the housing profile of the Public Housing Authority from the REAC database. On the day of an inspection, the inspector confirms the accurate count of units and hits a "Generate Sample" button that, using an embedded algorithm, produces a statistically valid sample of units to inspect. Ind. ¶ 7. The REAC inspector inspects the selected units as well as common areas and building exteriors and inputs the assessment into a computer program. REAC later generates an Inspection Report based on the inspector's input. Thirty-five percent of the score is dependent on the physical inspection. A high score on the assessment means that the Public Housing Authority receives less frequent inspections, less monitoring by HUD, and a three percent annual increase in capital funding from HUD. Ind. ¶ 8.

McLaughlin was the Executive Director of the CHA from 2000-2011, and Fitzpatrick was the Assistant Executive Director of Modernization and Capital Planning for the CHA from 2001-2012.

Ind. ¶ 9-10. Morosco owned and operated a consulting business in Utica, New York that consulted with public housing authorities and other housing entities that receive government assistance. Ind. ¶ 11. Morosco was also a certified REAC inspector. CHA hired Morosco as a REAC inspection consultant in 2004, and Morosco continued to provide consulting services to CHA through 2011. Ind. ¶ 11.

The indictment alleges generally that the three defendants knowingly and unlawfully conspired from approximately 2006 through some time in November 2011 to defraud the United States and its agency, the Department of Housing and Urban Development, "by impairing, impeding, and defeating the proper operation of the physical condition assessment of the federally-funded housing units of the Chelsea Housing Authority by the Real Estate Assessment Center, which relies on a statistically valid random sample of units to inspect." Ind. ¶ 13.

Specifically, the conspiracy was organized so that Morosco would use his status as a certified REAC inspector to access the REAC database and software. He would provide information to Fitzpatrick and McLaughlin in advance of the inspection about which units of the CHA would be "randomly" chosen for inspection. Ind. ¶ 14. Once Morosco provided a list of the units to be inspected, McLaughlin and Fitzpatrick directed CHA

employees to make any needed repairs to the identified units in advance of the REAC inspection. Ind. ¶ 15.

The indictment contains allegations of eighteen overt acts committed by at least one of the co-defendants in furtherance of the conspiracy.  Morosco accessed information about future inspections using his REAC credentials in December 2006, January 2009, and March 2011, Ind. ¶¶ 17 a, h, n, and provided information about the units to be inspected to an employee of the CHA, Ind. ¶¶ 17 b, i, o.  McLaughlin used this information to send CHA employees to perform repairs on the units that were going to be inspected. Ind. ¶¶ 17 c, j, p.  Fitzpatrick provided Morosco notification about a future inspection, Ind. ¶ 17 f, and later sent Morosco an email about keeping information concerning the REAC inspections from the CHA manager, Ind. ¶ m.  Morosco accompanied the REAC inspectors during their inspection.  Ind. ¶¶ 17 d, k, q.  McLaughlin took steps to inform CHA employees making the repairs that a CHA employee had devised an algorithm to predict the units and to not disclose Morosco's role.  Ind. ¶ 17 r.

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Criminal Procedure 12 allows a district court to dismiss an indictment prior to trial if the indictment is insufficient.  However, it is sufficient if the indictment

5

"contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend" and "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling* v. *United States,* 418 U.S. 87, 117 (1974)(internal citations omitted). In determining whether the indictment is sufficient, I take the allegations as true and do not make any determination about the sufficiency of the evidence. *United States* v. *Stewart*, 744 F.3d 17, 22 (1st Cir. 2014).

**B.   Void for Vagueness**

The Fifth Amendment's Due Process Clause mandates that the conduct for which a person is held criminally accountable "be prohibited with sufficient specificity to forewarn of the proscription of said conduct." *United States* v. *Anzalone,* 766 F.2d 676, 678 (1st Cir. 1985). A criminal statute is void for vagueness if it does not "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender* v. *Lawson,* 461 U.S. 352, 357 (1983).

The sole count of the indictment alleges a violation of 18 U.S.C. § 371, a statute that criminalizes a conspiracy "to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any

purpose . . ." A conspiracy to defraud, within the meaning of the statute, includes both plans to deprive the government of money or property as well as a conspiracy to interfere with government functions. *United States* v. *Goldberg*, 105 F.3d 770, 773 (1st Cir. 1997).

The First Circuit has noted that the "defraud clause of section 371 has a special capacity for abuse because of the vagueness of the concept of interfering with a proper government function." *Goldberg*, 105 F.3d at 775. The Supreme Court has voiced similar concerns. *See, e.g.*, *Dennis* v. *United States*, 384 U.S. 855, 860 (1966). Morosco and Fitzpatrick contend that applying § 371 to interference with a REAC inspection goes too far and that they had no notice that their conduct would fall within the statute's proscription.

Morosco's first objection rests on the fact that interfering with a HUD REAC inspection, on its own, is not a federal crime. Morosco argues that, since there is no federal criminal common law, it is improper to turn interference with non-criminal HUD regulations, 24 C.F.R. §§ 902.20 et seq., into a federal felony offense. He invokes separation of powers principles, contending that the prosecutor does not have the power to charge someone criminally for conduct that Congress has not directly criminalized as a separate criminal offense.

There is no question that the conspiracy to defraud provision of § 371 is very broad. However, it is not vague as applied here merely because the goal of the conspiracy is not separately criminalized under another federal statute. Section 371 contains two clauses, phrased in the alternative—a conspiracy either to commit any offense or a conspiracy to defraud. While the first clause requires that the conspiracy concern the commission of an independent offense, the second does not. The First Circuit noted this difference between the two clauses in § 371, stating that "[i]f the second clause were interpreted to require commission of a specific offense, it would have the same meaning as the first clause thus rendering the second clause redundant." *United States* v. *Barker Steel Co., Inc.*, 985 F.2d 1123, 1131 (1st Cir. 1993).

The defraud clause of the conspiracy statute does not require the commission of a specific offense or the commission of any crime other than the conspiracy itself. *United States* v. *Tarvers*, 833 F.2d 1068 (1st Cir. 1987) (Section 371 "does not require that the means used to achieve the unlawful goal of the conspiracy be unlawful."). The statute itself, as construed by the First Circuit in *Barker Steel*, makes it reasonably clear that § 371 may be applied to conspiracies to defraud the United States even when the underlying acts standing alone are not criminal. *See United States* v. *Lanier*, 520 U.S. 259, 267

(1997)("the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal.").

Morosco next contends that he had no notice that his behavior was illegal because HUD encourages pre-inspection and the use of consultants. He points to the many services he provided to the CHA that were entirely within the scope of the types of pre-inspection consultation that HUD encouraged. But that is not all that he is alleged to have done. The indictment alleges that he improperly used his REAC credentials to provide information to CHA secretly as part of a plan to interfere with the REAC inspections.

Morosco suggests that the services he provided were consistent with HUD's instructions to the PHAs and could have been done using publicly available software. The government has responded, alluding to evidence beyond the bounds of the indictment, that the publicly available software would not have contained the information that Morosco provide to the CHA. For purposes of this motion, I disregarded any evidence submitted that was not referenced within the language of the indictment. While evidentiary issues will no doubt be relevant at trial, they do not provide a basis to answer the question whether Morosco was on notice that the actions alleged in the indictment would fall under § 371. The acts alleged in the indictment go

9

beyond the consulting and pre-inspection encouraged by HUD and each of the defendants is alleged to have intended to interfere with the REAC inspection process.  Whether the overt acts were committed or whether there ultimately will be sufficient evidence of intent to defraud are not relevant at the motion to dismiss stage.

**C.   Failure to Allege all Elements of a Crime**

The Sixth Amendment to the United States Constitution grants a person charged with a federal crime the right "to be informed of the nature and cause of the accusation."  U.S. Const. amend. VI.  Rule 7(c) of the Federal Rules of Criminal Procedure require that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).

There are three elements to a § 371 conspiracy charge: (1) an agreement, (2) an unlawful objective, and (3) an overt act in furtherance of the agreement.  *Barker Steel Co.*, 985 F.2d at 1127-28.  When the allegations are that a defendant attempted to defraud the United States, the fraud must be a purpose or object of the scheme and not just a foreseeable consequence.  *Goldberg*, 105 F.3d at 770.

The indictment in this case contains a general allegation providing facts about the time and substance of the charge while

largely tracking the language of the statute.  Paragraph 13 of the indictment states:

> From in or around sometime in 2006 through in or around sometime in November, 2011, in Chelsea in the District of Massachusetts and elsewhere, the defendants James H. Fitzpatrick, Michael E. McLaughlin, and Bernard J. Morosco knowingly and unlawfully conspired and agreed with each other and with others both known and unknown to the Grand Jury to defraud the United States and an agency thereof, that is, the Department of Housing and Urban Development, by impairing, impeding, and defeating the proper operation of the physical condition assessment of the federally-funded housing units of the Chelsea Housing Authority by the Real Estate Assessment Center, which relies on a statistically valid random sample of units to inspect.

The indictment also contains general allegations about the CHA, the REAC inspections, the positions held by the defendants, as well as detailed allegations including specific overt acts taken by the defendants in support of the conspiracy, as laid out above.

An indictment is generally sufficient if it sets forth the offense in the words of the statute, so long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the [offense] to be punished . . ." *Hamling,* 418 U.S. at 117 (quoting *United States* v. *Carll*, 105 U.S. 611, 612 (1882)).  The language must include "a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is

charged." *Id.* at 117-18 (quoting *United States* v. *Hess*, 124 U.S. 483, 487 (1888)).

An indictment is given a common sense reading, and is "read to include facts which are necessarily implied by the specific allegations made." *United States* v. *Barbato*, 471 F.2d 918, 921 (1st Cir. 1973). "At the indictment stage, the government need not 'show,' but merely must allege, the required elements." *Stewart*, 744 F.3d at 21. "[C]ourts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." *Id.* at 21 (citing *United States* v. *Guerrier*, 669 F.3d 1, 3-4 (1st Cir. 2011).

1. Agreement: Intent

Contrary to Morosco's claims that the indictment fails to allege that he acted with the intent to interfere with a REAC inspection, I find that the indictment alleges in the general allegation paragraph that he "knowingly and unlawfully" conspired and agreed to defraud the United States through interfering with the REAC inspection. Ind. ¶ 13. The general allegation is supported by statements of facts and circumstances, specifically that he accessed the REAC database and software without authorization and provided information to CHA about its inspection in advance. Ind. ¶¶ 17 a, b, h, i, n, o. The indictment adequately alleges intent to join the

conspiracy and provides sufficient facts to inform Morosco of the requisite intent for the offense with which he is charged.

    2. Unlawful Objective

Similarly, Morosco argues that the indictment fails to allege a purpose to the conspiracy. To the contrary, the purpose is laid out clearly in the general allegation paragraph, stating an intent "to defraud . . . by impairing, impeding, and defeating the proper operation of the physical condition assessment of the federally funded housing units of the Chelsea Housing Authority by the Real Estate Assessment Center, which relies on a statistically valid random sample of units to inspect." Ind. ¶ 13. This paragraph of the indictment directly addresses the purpose of the conspiracy.

The indictment explains generally the operation of the REAC inspections—as laid out in the regulations—which involve a physical inspection of the CHA's units based on a randomly selected, statistically valid sample of units. Ind. ¶ 6. The goal of this inspection is to determine whether the PHA is "decent, safe, sanitary, and in good repair." Ind. ¶ 4.

The indictment does not need to lay out specific allegations about the exact way in which the CHA's advance knowledge of which units will be inspected impairs, impedes, and defeats the method of inspecting. Advance knowledge of which units would be chosen followed by preemptive repairs and

13

maintenance for those units makes the samples unreliable as indicators of the quality of all units. While the indictment does not specifically state this causal connection, that causation is necessarily implied by the allegations in the indictment. *See Barbato*, 471 F.2d at 921.

Morosco next argues that identifying in advance which units would be chosen by the REAC inspector and making any needed repairs in advance does not amount to interfering with a government function. First, he argues that the physical inspection makes up only thirty-five percent of a REAC inspection score and that it is not a necessary part of passing the inspection because a public housing authority could get a score of zero on the physical inspection and still pass the inspection. Next, he argues that the indictment does not allege that the scheme would have actually interfered with the overall score. He claims that without a specific allegation that pre-inspecting and repairing the units would lead to a higher score, the allegations about pre-inspection do not suffice. Finally on this point, Morosco also claims that the indictment does not allege that the CHA inspected and fixed only the units they expected to be part of the REAC inspection.

The indictment need not allege that Morosco's actions actually interfered with the REAC inspection nor even that they were actually capable of doing so. *See United States* v. *Dixon*,

14

449 F.3d 194, 202 (1st Cir. 2006)(factual impossibility is not a defense to liability for inchoate offenses such as conspiracy). An allegation of conspiracy to defraud under § 371 focuses on the agreement to defraud, not the ultimate effect of that agreement. The Supreme Court has observed that "the essence of a conspiracy is an agreement to commit an unlawful act. That agreement is a distinct evil, which may exist and be punished whether or not the substantive crime ensues." *United States* v. *Jimenez Recio*, 537 U.S. 270, 274 (2003).

Morosco attempts to draw a distinction between interfering with part of the inspections—the inspection of the units themselves—and interfering with the overall purpose of the REAC inspections, which was to inspect the overall housing authority. The mere fact that CHA could have failed the unit inspection but still have been deemed a high performer if all other aspects of the inspection went well does not mean that the unit inspection itself is not part of a larger government function. The indictment did not need to allege interference with every aspect of the inspection to allege an intent to interfere with a government function.

The indictment alleges an intent to interfere with the REAC inspections, Ind. ¶ 13, as well as numerous facts and circumstances that support that allegation; it provides Morosco

15

with additional information about the offense with which he is charged. An indictment need not do more.

   3. Overt Act

Finally, Morosco takes issue with the overt acts alleged in the indictment, contending that they make no sense and therefore cannot be the foundation of an indictment. The indictment alleges that the units inspected were "randomly selected" on the day of the inspection, ¶ 14, by a REAC inspector using a handheld computing device, ¶ 7. The indictment also alleges that Morosco provided information to the CHA, which was used to create in advance the list of units that would be inspected. Morosco's argument centers on the claim that if the choice of units is randomly generated on the day of inspection, as stated in the indictment, it does not make sense that Morosco could have provided that information to the CHA because the list did not yet exist.

Morosco is correct that the indictment does not include allegations about what exactly Morosco downloaded from the HUD website using his REAC credentials nor how Morosco was able to determine which units would be "randomly" selected for inspection on the date of the REAC inspection.[3] It does,

---

[3] The government attempts to respond to this concern with a footnote in its opposition, providing additional information about the workings of the REAC computer program. I do not consider this additional information in my analysis here. The

16

however, allege that Morosco used his REAC inspector credentials to access information about the upcoming CHA inspection, that he transmitted that information to the CHA, and that the information was used to create a list of units in the CHA that would be "randomly inspected" during the upcoming REAC inspection. Ind. ¶¶ 17 a, b, n, o. For the 2009 inspection, the indictment alleges that Morosco himself provided Fitzpatrick and another CHA employee a list of units in the CHA that would be randomly inspected. Ind. ¶ 17 i.

These allegations certainly make out overt acts taken by Morosco. The claim that the overt acts are nonsensical is an attack on the force of the evidence, not on the sufficiency of the allegations in the indictment. Morosco may, of course, challenge the government's evidence and, if he chooses, offer evidence of his own, and argue at trial that it would be impossible for his actions to defeat a "random" designation of units. The government may present evidence of how the information provided by Morosco did, could have, or was designed to interfere with the REAC inspection. The question whether

---

admonition that Rule 12 was not intended to permit "speaking motions" that consider facts outside of the pleadings is usually directed to a defendant seeking to raise evidentiary issues before trial, *see, e.g. United States* v. *Spring*, 810 F.Supp.2d 331, 336-37 (D. Me. 2011) (citing 1A Charles Alan Wright & Andrew D. Leipold, Fed. Prac. & Proc. Crim. § 194 (4th ed. 2008)), but it applies equally to the government.

specified overt acts occurred and whether they furthered the conspiracy is appropriately left to the jury. *Stewart*, 744 F.3d at 22.[4]

### III. CONCLUSION

The indictment sufficiently alleges each element of the offense of conspiracy to defraud under 18 U.S.C. § 371 and the statute is not unconstitutionally vague as charged in this case. Whether the evidence at trial will support the allegations is a question for the jury. For the reasons stated more fully above, I have GRANTED Fitzpatrick's Motion (Docket No. 110) to Join Morosco's Motion to Dismiss (Docket No. 105) and have DENIED the Motion to Dismiss both as to Morosco and as to Fitzpatrick.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT

---

[4] Fitzpatrick is featured much less prominently in the section of the indictment alleging overt acts. This does not place him in a better position, however. Conspiracy does not require that each co-conspirator commit an overt act but only that at least one of the co-conspirators commit an overt act. *See United States* v. *Martin*, 228 F.3d 1, 11 (1st Cir. 2000).