UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,      )
      )
      )
v.      )      CRIMINAL NO. 13-10308-DPW
      )
BERNARD J. MOROSCO,      )
      )
Defendant.      )
      )

MEMORANDUM AND ORDER
October 22, 2015

This is yet another instance of what has become a distressing dimension to expense requests by Criminal Justice Act attorneys: the pursuit of post hoc payments for compensation to consulting professionals, despite the fact that such expenditures were never authorized by the Court in the amounts claimed and no effort has been made to provide anything beyond conclusory justification.

Pending before me are (1) "Defendant's Ex Parte Motion for Reconsideration on the Issue of Funds for Investigator" (Dkt. No, 126), seeking reconsideration of what is styled a "refusal to allocate $2,500.00 in funds for time already expended by the investigator in excess of the original amount allowed" and (2) CJA 21 Voucher No. 0101.0001910 dated June 5, 2015 specifically seeking $9,214.73 for the investigator.

As a result of directions I gave defendant's counsel during the course of her Criminal Justice Act representation of the defendant, she correctly anticipated that I would be hesitant about approving unauthorized expenditures and seeks to relieve that hesitation.  I remain unwilling to provide such relief and will deny the motion.

Consequently, I will approve the pending invoice only in an amount subject to prior authorization.

## I.

The relevant statute provides the framework for understanding the issues and disposing of the motion.

Under the Criminal Justice Act, 18 U.S.C. 3006A(e)(1), funds for investigative services may be authorized by the court upon a showing that they are necessary for adequate representation of a person financially unable to obtain them.  The total cost of services without prior authorization may not exceed $800.00, *id.* at § 3006A (e)(2), unless there is a "finding that timely procurement of necessary services could not await prior authorization," *id.* at § 3006A (e)(3).

These statutory mandates are restated in this Court's *Guidelines for Claims Submitted for Reimbursement under the Criminal Justice Act* dated November 14, 2013.  §§ 4.1 ("Advance Authorization Required Over $800") and 4.3 ("Request for *Nunc Pro Tunc* Authorization").[1]

## II.

On April 11, 2014, in response to the defendant's motion (Dkt. No. 56) filed April 8, 2014 for $3,500.00 in funds for an investigator, I authorized "an amount not to

---

[1] The statutorily based federal restrictions regarding the *nunc pro tunc* authorization and disbursement of indigent defense funds is in contrast to the law applicable in the Massachusetts state courts where "there is no requirement that a defendant seek prior approval for funds."  *Commonwealth* v. *Vasquez*, Appeals Court No. 2009-J-0340 (Order, Aug. 25, 2009) (Rubin, J., Single Justice) at 3 n.1.

exceed $2,500.00 at rates utilized customarily by CPCS [the Committee for Public

Counsel Services, the Massachusetts state public defender agency]" (Dkt. No. 59).

Defendant's counsel submitted an invoice, Voucher No. 140709-23, for $1,177.50

on June 19, 2014, including services through April 6, 2014 (i.e. before authorization) in

the amount of $960.00.  Although the issue was troublesome — especially given the

lack of justification offered — without further inquiry of counsel, I assumed that the

pre-April 8 services could not await prior authorization.  I also observed that the

investigator claimed an hourly rate of $75.00, which exceeded the CPCS maximum

hourly rate of $50.00.[2]  But I took no adverse action on those grounds at that time.  My

allowance of Voucher No. 140709-23 left $1,322.50 in available funds remaining under

the April 11, 2014 authorization.

On November 20, 2014, the defendant submitted a motion (Dkt. 108) seeking

additional funds for the investigation, observing that the "[t]he Court has already

allowed $2,500 for investigator services."  The motion also stated that $4,955.00 was

owed to the investigator.  At a conference on December 3, 2014, I denied this motion

without prejudice observing that any additional authorization would be held strictly to

CPCS rates and would cover only services undertaken after the relevant authorization

was sought.  In particular, I informed counsel that any additional funds request was

---

[2] This court's guidelines for reimbursement look to CPCS rates as the standard for
rates.  *See* "*Guidelines for Claims for Reimbursement under the Criminal Justice Act*"
§ 4.6 ("Presumptive Rules").  Under the Court's *Guidelines*, "[a]pproval to exceed the
presumptive hourly rate must be obtained in advance."  *Id.*  The CPCS rates for
investigators during the relevant time period was $25.00 - $50.00.  *The Committee for
Public Counsel Services, Qualifications and Rates for:  Investigators, Social Service
Providers and Expert Witnesses* at 4, 12 (Dec. 19, 2011).

unlikely to be the occasion for recouping the $4,955, except as previously authorized and not yet paid.

On January 21, 2015, the defendant submitted another motion (Dkt. 120) for $10,000 in additional funds for the investigator, again observing that the "[t]he Court has already allowed $2,500 for investigator services."  The motion also stated that $4,955.00 was owed to the investigator.  However, the motion represented that "[t]he new amount requested will be used for work occurring after the Court review [of] this new motion."  Upon the representation that the newly requested funds "w[ould] be used for work occurring after the Court review of this new motion," I allowed the motion the following day.

III.

Invoice No. 0101.0001910 for investigator services —the one now before me — is supported by three additional bills from the investigator.  In her cover memorandum, the investigator acknowledged compliance with (styled as "reduction to") the CPCS maximum rate of $50.00 an hour.

1.      The first bill, dated August 27, 2015, anachronistically claimed payment for services for the period August 4, 2014 through "9/4/14" (sic) totaling $2,029.80.  I will approve payment of only the remaining funds of $1,322.50 (nominally[3] at a $75.00

---

[3] I have used the $75.00 per hour rate the investigator had claimed and received in connection with the first invoice, No. 140709-23 because I did not clarify (although clarification should not have been necessary) until November 20, 2014 that $50.00 is the maximum allowable for investigation under CPCS rates.  The claimed services were undertaken before November 20, 2014 so reliance interests might be said to have been in play.  I note that even if the CPCS rate were used, the remaining $1,322.50 from the April 15, 2014 authorization would have been exhausted by the amounts claimed on the first bill.

per hour rate) available from the April 15, 2014 authorization together with $114.80 in travel expenses.

2.     The second bill dated October 16, 2014 claimed payment for services through "10/8/14" of $2,270.00 and expenses of $141.82 after auditing adjustments.  I will approve only the expenses, since the services were not subject to any prior authorization.

3.     The third bill, dated April 2, 2015, claimed payment for services after the January 22, 2015 authorization for additional funds.  I will approve payment for the full amount of $4,680.00 in services (at the proper CPCS rate of $50.00) and $91.20 in expenses after auditing adjustments.

IV.

As this Memorandum and the time taken to produce it indicate, disentangling the reimbursement requests before me has taken considerable time of the court and its staff that might otherwise have been devoted to other matters.  The challenge was compounded by the dissonance between (a) counsel's representation in her motion (Dkt. No. 126) that any "new amount requested [for the investigator's work] will be used for work occurring after the Court review" of her new motion filed on January 21, 2015 and (b) her submission of Invoice No. 0101.0001910 thereafter supported by bills from the investigator claiming reimbursements not previously authorized.

As this Court's *Guidelines* observe, while the Court has the responsibility to supervise CJA expenditures and the authority to disapprove claims for compensation, that supervision and the exercise of that authority "is often difficult to administer effectively and may involve substantial adjustments by the reviewing judge that could

have been avoided with the exercise of due care by the counsel." *Guidelines* at 1 (unpaginated).

It is the duty of counsel to supervise the activities of the professionals they engage to assist them.  In the words of this Court's *Guidelines*:  "[t]here is no substitute for the exercise of careful and responsible professional judgment by the attorney." *Guidelines* at 1 (unpaginated).  Adequate supervision requires that when funds beyond those authorized are to be sought, they should be sought at the earliest point at which their necessity is identified.  Absent exigent circumstances, professionals may not expect payment for services unless authorized in advance.[4]  There is nothing approaching exigent circumstance here.  The neglect of counsel to provide adequate supervision will not excuse ex post submission of invoices by professionals.  The consequences of the failure in supervision is a matter between counsel and the professionals they choose to engage.  For its part, especially in this austere budgetary environment, the Court cannot and will not be positioned to pay public funds for something it never authorized or was even asked to authorize.

Counsel has quite accurately noted that even authorized CJA levels of compensation and reimbursement in a legal market like Boston are parsimonious.  I recognize, as counsel also observes, that a skilled, diligent and able counsel like her can command higher and much more reasonable levels of compensation outside the

---

[4] *See* "*Guidelines*" at § 4.3 "[a]ny request seeking *nunc pro tunc* authorization for services rendered will not be approved absent a finding by the court, upon good cause, that timely procurement of such services could not reasonably await prior authorization."

administered pricing system established under the Criminal Justice Act. [5]  The administration of justice certainly benefits from the willingness of counsel of the highest competence — such as counsel here — to participate in Criminal Justice Act representation.  It would be a grave indictment of the administration of justice — and of the larger aspirations, indeed obligations, of the legal profession and its most capable practitioners — if the constraints of the Criminal Justice Act compensation scheme were to cause such counsel to diminish their aspirations and redefine their obligations by declining to participate in indigent defense.  But the challenges presented by the CJA compensation scheme do not provide a basis for either counsel in the first instance — or the court ultimately — to ignore statutory direction, however parsimonious.  Especially in this setting, it is of exemplary importance that all participants comply with the rules.

V.

For the reasons more fully set forth above, I will approve payment of $6,002.50 in services and $347.82 in expenses on CJA Voucher No. 0101.0001910.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

[5] I note that even counsel privately retained pursuant to a retention agreement at market rates would be obligated to comply as a matter of contract law with a *nunc pro tunc* requirement such as that statutorily applicable to CJA representation, if the requirement were to be embodied in the retention agreement.  As with government decision makers evaluating CJA reimbursement, private parties responsible for disbursements cannot be expected to pay for something they did not authorize.